UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| SABRINA ELAINE OVERBAY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-00337-TAV |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN RAY ISRAEL, ISRAEL | ) | |
| ENTERPRISES, KAREN D. WILHOIT- | ) | |
| LANDRY, MICHAEL CARROLL | ) | |
| QUINTON, LARRY WILLIAM IDOM, | ) | |
| | | |
| Defendants | | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference filed by the District Court referring the two pending motions for an Order and/or Report and Recommendation. [Doc. 21]. Defendants Larry William Idom[1] ("Idom") and Michael Carrol Quinton ("Quinton") have a filed a motion to dismiss and/or strike [Doc. 12] seeking the dismissal of the case against the remaining defendants who have not been served or in the alternative to strike portions of a previous order that noted that Defendants John Israel and Israel Enterprises d/b/a McDonald's had been served. Plaintiff has filed a second motion for an extension of time to effect service of process on those remaining defendants [Doc. 16].

**I.    BACKGROUND**

Plaintiff filed this complaint alleging violations of the Family and Medical Leave Act ("FMLA"), claiming that upon her return to work, following approved FMLA leave, her employer assigned her job duties inconsistent with her job as an Assistant Manager [Doc. 1,

---

[1] Defendant has noted that his name is, in fact, William Larry Idom not Larry William Idom [Doc. 22].

1

*Complaint,* pg. 5]. She claims that "her scheduled pay raise had been suspended until the following year" which she claimed violated her FMLA rights. *Id.* At a scheduled meeting to discuss these issues the next day, she claims the defendants advised her that "she had quit her job the day before and therefore no further reason existed for them to continue speaking with [her] about her FMLA concerns and complaints." *Id.* at 6. She claims that the defendants interfered with her exercising her rights under FMLA, terminated her in retaliation for exercising those rights, and otherwise discriminated against her. *Id.* at 7-8.

Plaintiff filed her complaint on November 2, 2016 and had summonses issued for all the Defendants. Plaintiff's counsel retained the services of a private process server, Vanessa Ellison ("Ellison"), to serve the parties. She had served pleadings for Plaintiff's counsel for three years, as well as for the Department of Children Services and for other attorneys in the area [Doc. 19, *Affidavit of Vanessa Ellison,* pg. 1]. On December 23, 2016, she served Defendants Idom and Quinton [Doc. 13-14].

In her affidavit, Ellison details the efforts she took to serve the remaining Defendants. With respect to Defendant Karen Wilhoit ("Wilhoit"), Ellison went to Wilhoit's residence on December 17, 2016, but no one was home. She left a note with her telephone number for Wilhoit to contact her. Later that day, Wilhoit called Ellison, and they discussed the lawsuit and having a meeting in person for Ellison to serve Wilhoit with the pleadings. On December 20, 2016, Ellison called Wilhoit to arrange service. Wilhoit did not answer her phone, so Ellison left a voicemail message. On December 23, 2016, the same thing occurred. On January 3, 2017, Ellison called Wilhoit and once again only got her voicemail. She left another message. On January 11, 2017, Ellison showed up at Wilhoit's residence and Wilhoit's husband answered the door. Ellison did not serve the pleadings on him, (though she could have), but instead asked

2

whether Wilhoit was available. He advised Ellison that he was oblivious of his wife's schedule. He professed ignorance regarding where his wife was or when she would be returning home [Doc. 19, pg. 2]. Ellison called Wilhoit again when she left the residence that evening but again no one answered the phone. Later that evening, Ellison returned to Wilhoit's residence to serve the pleadings. Even though the same vehicles were present, no one answered the door. On January 25, 2017, Ellison returned to Wilhoit's residence again and no one came to the door. Ellison then called Wilhoit again and got no answer. The last attempt Ellison made to contact Wilhoit was on March 6, 2017, when she called her again but had to leave another voicemail message because Wilhoit did not answer the phone.

Regarding Israel and Israel Enterprises, d/b/a McDonald's, on December 20, 2016, Ellison called the office of Israel and Israel Enterprises and left a voicemail message requesting a return call. Israel did not return the call. On December 23, 2016, Ellison again contacted Israel's office and left another message on his answering machine. Her call was not returned. On January 3, 2017, Ellison called the same number again but this time was able to reach Israel's secretary. Ellison provided her contact information and requested Israel to contact her. Israel did not return her call. On January 11, 2017, Ellison called Israel's office again and spoke with his secretary. She advised Ellison that she had given Israel her message. Again, Israel did not return the call [Doc. 19, pgs. 3-4].

On January 2, 2017, Plaintiff, knowing that she only had 90 days to effect service of process,[2] asked the Court to extend the time "to serve process on the Defendants." [Doc. 4, pg. 1]. Notwithstanding the rather broad request to serve "the Defendants," she actually only requested additional time to serve Wilhoit. She mistakenly represented that all the other

---

[2] See Fed.R.Civ.P. 4(m) requiring Plaintiff to effect service within 90 days after the complaint is filed.

3

Defendants, Idom, Quinton, Israel, and Israel Enterprises, had already been served. She claimed that the "issue now is with the Defendant Wilhoit-Landry," who she claimed "may be evading process…." [Doc. 4, pg. 2]. She requested an additional 30 days "to return service on this Defendant." *Id.* The Court granted the motion, reciting Plaintiff's representations that all the other Defendants had been served, and extended the time to serve Wilhoit by another 30 days.

In the meantime, Idom and Quinton retained counsel. On January 11, 2017, their counsel contacted Plaintiff's counsel regarding her representation of Defendants. She advised that she might be representing the other Defendants in the case and requested "entry of a stipulation to extend the time to file an answer to allow the filing of one, consolidated answer." [Doc. 22-1, *Affidavit of Tonya Cammon,* pg. 2]. The next day, on January 12, 2017, counsel for Idom and Quinton filed a Notice of Appearance [Doc. 7]. On January 13, 2017, their counsel, in reviewing the docket sheet, discovered that Plaintiff's counsel had represented to the Court, in Plaintiff's motion for additional time to serve Wilhoit, that Israel and Israel Enterprises, had been served. As noted, at that point, they had not. She contacted Plaintiff's counsel regarding that mistake and discussed with Plaintiff's counsel his obtaining waivers of service of process on the remaining unserved Defendants and forwarding them to her.

On February 3, 2017, Idom and Quinton filed their answer, [Doc. 11], and this motion to dismiss [Doc. 12]. Idom and Quinton argue that the Court should dismiss the suit against co-Defendants Israel, Israel Enterprises, d/b/a McDonald's, and Wilhoit because the Plaintiff did not serve them within the 90-day period required by Rule 4(m). The time to serve the Defendants under Rule 4(m) would have expired four days before, on January 31, 2017. In response, Plaintiff acknowledges that these Defendants have not been served and requests a second extension of time to complete service.

For the reasons stated herein, this Court RECOMMENDS that Defendants' motion to dismiss be DENIED, Defendant's motion to strike be DENIED AS MOOT and Plaintiff's motion for an extension of time be GRANTED with a specific time period set in which to serve the remaining Defendants.

## II.  ANALYSIS

The Court first notes the unique procedural posture of this case. Idom and Quinton are asking the Court to dismiss the case, not as to them, but as to the co-Defendants Israel, Israel Enterprises and Wilhoit, who have not been served and who are not before the Court.[3] Idom and Quinton have been served and are properly before the Court. It is not entirely clear that either Idom or Quinton have standing to complain about the timing of service on their unserved co-Defendants.

Assuming that they do, Fed.R.Civ.Pro. 4(m) provides as follows:

If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Rule 4(m) directs the Court to undertake a two-part analysis. First, the Court must determine whether plaintiff has shown good cause for the failure to effect timely service. If it has, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *Collett v. Kennedy, Kootnz & Farinash*, No. 3:14-CV-552, 2015 WL 7254301, at *3 (E.D. Tenn. Aug 14, 2015)(quoting *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)). Second, if plaintiff has not shown good cause, the Court must either (1) dismiss the action without prejudice, or (2) direct that service be effected within a specified time. *Id.* (citing

---

[3] Wilhoit has filed an affidavit in support of Idom's and Quinton's motion to dismiss as to her but has otherwise not entered an appearance [Doc. 22-7].

5

*Henderson v. United States*, 517 U.S. 654, 663 (1996) ("[C]ourts have been accorded discretion to enlarge the service of time period 'even if there is no good cause shown'")).

It is clear from the record that Plaintiffs lack of service on Israel, Israel Enterprises and Wilhoit was not for lack of trying. At the commencement of the case, Plaintiff's counsel had the summonses as to all Defendants issued by the clerk's office.[4] Plaintiff's counsel retained the services of an experienced process server. As previously stated, she has served pleadings for Plaintiff's counsel for the past three years, worked in the same capacity for the Department of Children Services, and for other attorneys. She went to Wilhoit's residence numerous times to effectuate service. While she could have served Wilhoit's husband, she did not, in an obvious attempt to provide actual service to Wilhoit. Not surprisingly, after the first phone call from the process server, Wilhoit never again answered her phone when the process server called.

The process server's efforts to serve Israel were, admittedly, not as zealous. She did not go to his residence nor to his place of business. However, she also did not just sit on her hands and do nothing. Instead, she contacted Israel's place of business on four occasions in an effort to arrange service of the pleadings. Based on the process server's affidavit, Israel's secretary advised Ellison that she gave Israel the message. He simply did not act on it or return the process server's call.

It is undisputed that the time has lapsed for service on the unserved Defendants. Therefore, this Court must determine whether Plaintiff has met her burden of showing good cause for the lack of service. If good cause is demonstrated, the Court must order a mandatory extension of time to effect service of process pursuant to Rule 4(m). *See Winston v. Bechtel*

---

[4] A plaintiff is responsible for serving the summons and complaint in accordance with Fed.R.Civ.Pro. 4 and within the time frame established by Rule 4(m). *See* Fed. R. Civ. P. 4(c)(1).

6

*Jacobs Co.*, No. 3:13-CV-192, 2015 WL 1192704, at *2 (E.D. Tenn. Mar. 16, 2015) (citing *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, 2000 VL 1785749, at *1 (6th Cir. Nov. 21, 2000)). The Sixth Circuit has explained that for a plaintiff to carry this burden, he or she must offer an explanation equivalent to "at least as much as would be required to show excusable neglect"; "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Moncrief v. Stone*, 961 F.2d 595, 597 (6th Cir. 1992) (internal citations omitted). "'Actual notice and lack of prejudice to the defendant are likewise insufficient to establish good cause.'" *Collett*, 2015 WL 7254301, at *5 (quoting *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 324 (E.D. Mich.2001)); *see Moncrief*, 961 F.2d at 597) (declining to find that lack of prejudice to the defendant constitutes good cause).

In this case, Plaintiff's counsel can be criticized for not properly tending to this issue. Counsel for Defendants Idom and Quinton was gracious to alert him to the fact that neither Israel nor his business were properly before the Court. Yet, Plaintiff's counsel did not avail himself of that knowledge. For that, he certainly stands to be criticized and justly so. Yet, it was not as if he had taken no steps to effectuate service on those Defendants. Indeed, at that time, the summons and complaint were in the hands of his process server, who was, as of January 11, 2017, still making calls to Israel's place of business in an effort to arrange a time for personal service. To be sure, more could have been done. He could have honored Defendant's counsel's request to send her waivers of service of process for those Defendants. See Fed.R.Civ.Pro. 4(d). He did not. If he did not want to go through their presumably future counsel, he could have requested directly from the unserved Defendants that they waive service. *Id.* He did not. He could have attempted service through certified mail as noted by Defendant's counsel. See Fed.R.Civ.Pro. 4(e)(1). He did not. His process server could have certainly been more zealous

7

in her efforts to serve Israel.  Waiting by the phone for Israel to call seems somewhat naïve.  As time went by, it should have become obvious that she might was well be waiting for a star to fall as to wait on a call from Israel.  She did exert more effort in trying to serve Wilhoit, who, by virtue of her ignoring all of her calls, was determined not to make effecting proper service a "walk in the park."  Wilhoit might not have been evading service, but she was not going out of her way to allow it to happen either.

One other factor enters into this analysis, and that is that Defendant's counsel advised Plaintiff's counsel that she intended to represent *all* of the named Defendants and wanted to file "one[] consolidated answer."  [Doc. 22-1].  While this does not excuse Plaintiff's lack of diligence in attempting to serve the remaining Defendants, certainly the idea was that when it came time for an answer to be filed, it would be on behalf of *all* Defendants.

To be sure, the actions by Plaintiff's counsel are not to be emulated, but they also cannot be fairly categorized as completely dilatory.  Counsel's conduct here appears to be distinguishable from that of the plaintiff's lawyer in *Winston v. Bechtel Jacobs Co., LLC,* 2015 WL 1192704 (E.D. Tenn. Mar. 16, 2015), in which Chief Judge Varlan dismissed the case without prejudice for that plaintiff's failure to effectuate service of process within the then 120 days (now 90 days) of the filing of the complaint.  There, the plaintiff filed his complaint on April 5, 2013.  The plaintiff then did nothing.  In fact, plaintiff did not even have process issued for service.  The case simply sat dormant until, on May 6, 2014, the Court issued an order for plaintiff to show cause why her case should not be dismissed.  Immediately thereafter, plaintiff had the summons issued and served.  The defendants (who were served) asked the Court to dismiss the case in accordance with Rule 4(m).  The Court held that the plaintiff's conduct was not excusable.  Noting a fourteen-month delay in obtaining service, the Court stated "Plaintiff

8

had full control over the time and manner in which defendants would be served. Her counsel simply failed to timely effect service, despite receiving notice that summons had not been issued." *Winston,* 2015 WL 1192704, at *3.

As the Court noted in *Winston*, "The determination of whether a case of neglect was excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005)). On balance, the Court finds that the equities favor finding good cause for failure to serve the remaining Defendants, and Plaintiff should be permitted additional time to effectuate service.

But even if the Plaintiff's conduct does not rise to the level of good cause required by Rule 4(m), the Court still "has discretion to permit late service even absent a showing of good cause." *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, 2000 VL 1785749, at *1 (6th Cir. Nov. 21, 2000). (citing *Henderson v. United States*, 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996)); *see also* Fed. R. Civ. P. 4(m) advisory committee's note ("The new subdivision . . . authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. . . ."). The Court finds that even if good cause has not been shown, this is a case in which the Court should exercise its discretion and grant a modest extension of time in which to properly serve the remaining Defendants.

In addressing whether to exercise that discretion, the factors considered by the Court include:

> (1) [W]hether a significant extension of time is required; (2) whether an extension of time would cause actual prejudice to the defendant other than the inherent 'prejudice' in having to defend the lawsuit; (3) whether the defendant had actual notice of the lawsuit; (4) whether dismissal of the complaint without prejudice under Rule 4(m) would substantially prejudice the plaintiff[], *i.e.,* cause the plaintiff['s] suit to be time-barred . . . ; and (5) whether the plaintiff [has] made diligent, good faith efforts to effect proper service of process.

9

*Treadway v. California Prod. Corp.*, 2013 WL 6078637, at *6 (E.D. Tenn. Nov. 19, 2013) (quoting *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D.Mich.2001)). First, if, as noted by Defendant's counsel, the remaining defendants are not evading service, then a significant extension of time would not be required to effectuate service. That factor weighs in favor of granting an extension. Second, no prejudice would inure to the Defendants if a modest extension were granted. That weighs in favor of granting an extension. Third, because Defendant's counsel represented to Plaintiff's counsel that she intended to represent all of the Defendants, and in fact is representing some of Israel Enterprises' employees now, it would be naïve to assume neither Israel nor Wilhoit know about the suit. That weighs in favor of granting an extension. Four, dismissing the action would not prejudice Plaintiff. That factor admittedly weighs in favor of not granting an extension. Finally, Plaintiff has made diligent – albeit his effort could have been better – efforts to effect proper service of process. This factor also weighs in favor of an extension.

If the Court were to dismiss this case, it would only be as to the unserved Defendants. Plaintiff would refile as to the unserved Defendants and the Court would then have to consolidate the two cases. Dismissal then would lead to a "meaningless recommencement" of the suit and attempted re-service of process. 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (4th ed. 2017). That seems that at least at this juncture not to be the appropriate resolution of this matter. If, however, Plaintiff does not effectuate service consistent with Rule 4(m), this issue may very well need to be addressed again.

On a final note, casting a long shadow over this analysis is of course the "policy in this Circuit of resolving disputes on their merits." *Vergis v. Grand Victoria Casino & Resort,* 199 F.R.D. 216, 218 (S.D.Ohio 2000). In consideration of these factors, even if Plaintiff cannot

10

show good cause, the Court recommends that discretion be exercised in this case to permit Plaintiff a brief extension of time to effectuate service of process.

Defendant also moved the Court to revise and correct its prior order that contain Plaintiff's misrepresentations about Israel and his business being served [Doc. 12, pg. 4]. The Court recommends this be DENIED AS MOOT. To be clear, Israel and Israel Enterprises d/b/a McDonald's, and Wilhoit have not been served. To the extent that the prior order represents to the contrary, that portion of the Order would be incorrect. The Court included that in the prior order solely on Plaintiff's counsel's representations in his motion. Those representations were wrong.

### III. CONCLUSION

Accordingly, the Court respectfully RECOMMENDS that Defendants' motion to dismiss the unserved Defendants without prejudice [Doc. 12] be DENIED, Defendant's motion to strike be DENIED AS MOOT, and Plaintiff's second motion for an extension of time [Doc. 16] be GRANTED, giving Plaintiff an additional 30 days to effect service of process.[5]

    Respectfully submitted,

    s/Clifton L. Corker
    United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).